UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

BRENDA FLOR MARTINEZ HERRERA,                       Petitioner,

v.                                                  Civil Action No. 4:26-cv-52-DJH

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and
Customs Enforcement et al.,                              Respondents.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Petitioner Brenda Flor Martinez Herrera, a noncitizen resident of Illinois currently detained in the Western District of Kentucky, seeks a writ of habeas corpus pending removal proceedings. She alleges that her detention by immigration authorities violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment. (Docket No. 1) The parties agreed to forgo a show-cause hearing given the absence of a material factual dispute (*see* D.N. 6), and they have submitted briefing setting out their respective legal arguments (D.N. 9; D.N. 10). After careful consideration, the Court will grant Herrera's petition for the reasons explained below.

**I.**

Herrera is a thirty-three-year-old citizen of Peru. (D.N. 1, PageID.2 ¶ 1; D.N. 9-1, PageID.59, 62) She entered the United States on April 14, 2023. (D.N. 1, PageID.8 ¶ 27; D.N. 9-1, PageID.59) On April 17, 2023, she was detained by immigration authorities and issued a Notice and Order of Expedited Removal, which she "[r]efused to [s]ign." (D.N. 9-2, PageID.67; *see id.*, PageID.66) That document charged Herrera as inadmissible as "an immigrant not in possession of a . . . valid entry document" pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). (D.N. 9-2, PageID.66) Only the section of the Notice and Order of Expedited Removal titled "Determination of

1

Inadmissibility" was signed by an immigration officer.[1]  (*See id.*)  A separate notice also designated Herrera as an "arriving alien in proceedings under [8 U.S.C. § 1225(b)(1)] or [8 U.S.C. § 1229a]."[2] (*Id.*, PageID.68)  She was deemed "subject to removal" pursuant to 8 U.S.C. § 1225(b)(1).  (*See* D.N. 9-1, PageID.60)

On April 19, 2023, Herrera was "released on a grant of humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5)(A)."[3]  (D.N. 1, PageID.8 ¶ 27; *see* D.N. 1-4, PageID.22)  The parole was valid for one year and "automatically terminate[d] . . . at the end of the one-year period."  (D.N. 1-4, PageID.22)  Herrera applied for asylum in May 2023.  (D.N. 1, PageID.9 ¶ 28)  On June 9, 2025, her asylum application was dismissed.  (*See* D.N. 1-6, PageID.28)  U.S. Immigration and Customs Enforcement (ICE) authorities re-detained Herrera on January 26, 2026, while she was attending a "required check-in."  (D.N. 1, PageID.9 ¶ 31)  Herrera was detained pursuant to an administrative

---

[1] Because the section of the same document titled "Order of Removal Under Section 235(b)(1) of the [Immigration and Nationality] Act" was not filled out or signed by an immigration officer (*see* D.N. 9-2, PageID.66), Herrera was not ordered removed from the United States.  *See Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *3 (E.D.N.Y. Nov. 28, 2025) ("Because the 'Order' portion of the form is blank[,] there is no dispute Rodriguez-Acurio was not ordered removed.").  Section 235 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1225.  *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *2 (E.D.N.Y. Oct. 6, 2025).  Respondents' description of the Notice and Order of Expedited Removal is consistent with the observation that Herrera was not ordered removed.  (*See* D.N. 9, PageID.52–53 ("On April 17, 2023, Petitioner was issued but refused to sign a Notice and Order of Expedited Removal, indicating that she was inadmissible due to her lack of necessary documents permitting entry into the United States." (citing D.N. 9-2, PageID.66–67))

[2] The document cites section 240 of the Immigration and Nationality Act, which is codified at 8 U.S.C. § 1229a and governs "[t]he 'usual removal process'" in which "a noncitizen may 'attempt to show that he or she should not be removed.'"  *Rodriguez-Acurio*, 2025 WL 3314420, at *8 (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)).

[3] Parole under 8 U.S.C. § 1182(d)(5)(A) "permits a noncitizen to physically enter the [United States] . . . subject to a reservation of rights by the Government that it may continue to treat the noncitizen 'as if stopped at the border.'"  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 484 (S.D.N.Y. 2025) (quoting *Thuraissigiam*, 591 U.S. at 139).

arrest warrant authorizing her detention under 8 U.S.C. § 1226.[4] (D.N. 9-3, PageID.70) She states that after she was detained, she was "forced to sign a document [indicating] that she accepted to be removed from the United States" but "does not know . . . whether what she signed was an expedited order of removal." (D.N. 1, PageID.9 ¶ 32) On January 29, 2026, she requested a credible-fear interview with an asylum officer.[5] (*See* D.N. 1-7, PageID.30) Herrera remains detained at the Grayson County Detention Center.[6] (*Id.*; D.N. 1-2, PageID.18)

Herrera seeks a writ of habeas corpus against Chicago ICE Field Office Director Samuel Olson, Acting Director of ICE Todd Lyons, Department of Homeland Security Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, and Grayson County Jailer Jason Woosley. (D.N. 1, PageID.4–5 ¶¶ 11–15) Herrera alleges that her detention violates the Immigration and Nationality Act and due process under the Fifth Amendment. (*See id.*, PageID.12–13 ¶¶ 41–46) Herrera asks the Court to order her immediate release. (*See id.*, PageID.13) Respondents argue that Herrera is lawfully detained under 8 U.S.C. § 1225(b)(1).[7] (*See* D.N. 9, PageID.53–57)

---

[4] The warrant cited section 236 of the Immigration and Nationality Act (D.N. 9-3, PageID.70), which is codified at 8 U.S.C. § 1226. *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *1 n.1 (W.D. Ky. Sep. 19, 2025).

[5] The record does not reflect that Herrera has received a credible-fear interview. (*See* D.N. 1, PageID.3 ¶ 6; D.N. 9, PageID.55 n.3; D.N. 10, PageID.81)

[6] On February 3, 2026, the Court granted in part Herrera's motion for a temporary restraining order and stay of removal and enjoined Respondents "from removing Herrera from the United States, deporting Herrera, or transferring Herrera from her current detention facility pending resolution of her habeas petition." (D.N. 5, PageID.48)

[7] Respondents do not contest that the Court has jurisdiction to review Herrera's petition (*see generally* D.N. 9). *See Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *2 (W.D. Ky. Nov. 18, 2025) ("[28 U.S.C. § 2241] confers jurisdiction [on district courts] to hear habeas corpus challenges to the legality of a noncitizen's detention." (citing *Rasul v. Bush*, 542 U.S. 466, 483–84 (2004))); *see also Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *4 (E.D. Mich. Oct. 29, 2025) ("The Court finds that it has jurisdiction over Salgado Bustos' habeas petition which challenges Respondents' authority to detain him under § 1225(b) where at the time of his arrest he had been admitted or paroled into the United States, had lived continuously in the country for over two years, and was not at a port of entry."). Nor do Respondents argue whether Herrera must exhaust administrative remedies. (*See generally* D.N. 9) Therefore, the Court will not address these issues.

## II.

**A.     Immigration and Nationality Act**

Herrera asserts that because she was paroled, her "detention under the expedited removal statute is unlawful." (D.N. 1, PageID.8 ¶ 24)  She specifically argues that she "is subject to full removal proceedings within § 1229a and detention under § 1226." (D.N. 10, PageID.76)  Respondents argue that Herrera is lawfully detained under 8 U.S.C. § 1225(b)(1) because "the expiration of [her] parole . . . did not change [the Department of Homeland Security's] detention authority" and that upon the expiration of her parole, Herrera "was required to be restored to the status [s]he had been in at the time of [her] parole—mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)." (D.N. 9, PageID.56 (internal quotation marks and citation omitted))

Section 1225(b)(1) governs "[i]nspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." § 1225(b)(1).  "Section 1225(b) requires mandatory detention" for noncitizens subject to expedited removal under § 1225(b)(1). *Rodriguez-Acurio*, 2025 WL 3314420, at *10.  Section 1225(b)(1) states in relevant part:

> (A) Screening
>    (i) In general
>    If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution.
>
> . . . .
>
> (II) Aliens described
> An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

4

§ 1225(b)(1)(A)(i), (iii)(II). Thus, § 1225(b)(1) "governs noncitizens: (1) who are inadmissible for lack of proper entry documents . . . and (2) who fall within either [§ 1225(b)(1)(A)(i) (as aliens "arriving in the United States") or (iii)(II)].'" *Rodriguez-Acurio*, 2025 WL 3314420, at *10 (citing § 1225(b)(1)(A)(i), (iii)(II)).

Noncitizens detained under § 1225(b)(1) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit,' pursuant to Section 1182(d)(5)(A)." *Id.* at *11 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). "Parole is 'not [to] be regarded as an admission of the alien[,] and when the purposes of such parole . . . have been served,' Section 1182(d)(5)(A) mandates that 'the alien shall forthwith return or be returned to the custody from which [s]he was paroled.'" *Id.* (omission and first and second alterations in original) (quoting § 1182(d)(5)(A)). Thereafter, a parolee's "case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." § 1182(d)(5)(A). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted." § 1225(a)(1).

Here, Respondents do not argue whether § 1225(b)(1)(A)(i) or (iii)(II) authorizes Herrera's detention; instead, they maintain that Herrera "was subject to expedited removal" because she was "determined to be inadmissible due to her lack of necessary documents." (D.N. 9, PageID.54; *see id.*, PageID.53–57) As explained above, however, whether a noncitizen lacks valid entry documents is only part of the analysis for whether § 1225(b)(1) authorizes mandatory detention. The Court will thus address § 1225(b)(1)(A)(i) and § 1225(b)(1)(A)(iii)(II).

As previously noted, § 1225(b)(1)(A)(i) authorizes expedited removal and mandatory detention of noncitizens who are "arriving in the United States." § 1225(b)(1)(A)(i). The Immigration and Nationality Act "does not define 'arriving' for purposes of" § 1225(b)(1)(A)(i).

*Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 62 (D.D.C. 2025). "When interpreting a statutory term Congress did not define, courts first look to the term's ordinary meaning."[8] *Id.* at 90 (citation omitted); *see United States v. Fitzgerald*, 906 F.3d 437, 442 (6th Cir. 2018). "[T]he plain meaning of the word 'arriving' is being 'in the process of reaching' a destination." *Rodriguez-Acurio*, 2025 WL 3314420, at *20 (quoting *Coalition*, 805 F. Supp. 3d at 90). "The words 'arriving,' 'arrival,' and 'arrive' in Section 1225 appear to refer to a process that occurs upon physical entry into the United States, 'not an interminable . . . status' that attaches to a noncitizen upon arrival." *Id.* (omission in original) (quoting *Coalition*, 805 F. Supp. 3d at 90). Here, Herrera was not "arriving in the United States" when she was re-detained on January 26, 2026. § 1225(b)(1)(A)(i). At that point, she had resided in the United States for nearly three years. *See Rodriguez-Acurio*, 2025 WL 3314420, at *21 ("When ICE arrested [Rodriguez-Acurio] . . .—more than four years after she entered the United States—Rodriguez-Acurio was not then, nor is she now, in the process of 'arriving' in the United States." (citation omitted)); *Coalition*, 805 F. Supp. 3d at 90–91 (observing that § 1225(b)(1)(A)(i) "would not naturally be read to refer to someone who previously reached the United States via a port of entry, underwent inspection at that port of entry, and then was paroled into the United States"). Thus, Herrera is not subject to expedited removal and mandatory detention as a noncitizen 'arriving in the United States.'"

Section 1225(b)(1)(A)(iii)(II) requires detention of noncitizens who "ha[ve] not been admitted or paroled into the United States" and have not "been physically present in the United

---

[8] Although Department of Homeland Security regulations define "arriving alien," *see* 8 C.F.R. § 1.2, they do not define "arriving in the United States." Courts interpreting the phrase "arriving in the United States" in § 1225(b)(1)(A)(i) have thus not found the regulatory definition of "arriving alien" dispositive or instructive. *See Coalition*, 805 F. Supp. 3d at 92; *Rodriguez-Acurio*, 2025 WL 3314420, at *19–21; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (holding that "courts must exercise independent judgment in determining the meaning of statutory provisions").

States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." § 1225(b)(1)(A)(iii)(II). Courts have thoroughly examined the phrase "who has not been . . . paroled into the United States" to conclude that § 1225(b)(1)(A)(iii)(II) does not "authorize[] expedited removal and the detention of noncitizens who . . . were paroled into the United States under Section 1182(d)(5)(A)." *Rodriguez-Acurio*, 2025 WL 3314420, at *14; *see id.* at *15–16; *see also Coalition*, 805 F. Supp. 3d at 83–89 (analyzing text, statutory context, regulations, and caselaw to conclude that § 1225(b)(1)(A)(iii)(II) "does not authorize designation for expedited removal of any noncitizen who has, at any point in time, been paroled into the United States"). Parole "permit[s] [the noncitizen] to move from the border to the interior of the country" and thus "serve[s] to do exactly what its plain text conveys—'parole [the noncitizen] into the United States' and out of expedited removal." *Rodriguez-Acurio*, 2025 WL 3314420, at *17 (emphasis omitted) (quoting § 1182(d)(5)(A)); *see also Coalition*, 805 F. Supp. 3d at 87 ("[P]arole operates . . . as a method of entry, not a status."). Accordingly, "Section 1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in [the United States] who are not subjected to expedited removal." *Rodriguez-Acurio*, 2025 WL 3314420, at *17 (citation omitted). Consistent with these observations, Herrera is not subject to expedited removal and mandatory detention under § 1225(b)(1)(A)(iii)(II) because she was paroled into the United States before her re-detention.[9]  (D.N. 1-4, PageID.22)

---

[9] In light of this conclusion, the Court need not consider whether Herrera had "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." § 1225(b)(1)(A)(iii)(II); *see Salgado Bustos*, 2025 WL 3022294, at *7 ("Because the Court finds Respondents' reliance on the expedited removal process here improper due to Salgado Bustos' prior parole status, there is no need to address the second prong of 18 U.S.C. § 1225(b)(1)(A)(iii)(II).").

Respondents maintain that "when Petitioner's parole was terminated, Petitioner was required to be restored to the status [s]he had been in at the time of [her] parole—mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)." (D.N. 9, PageID.56 (internal quotation marks and citation omitted))  Department of Homeland Security regulations state that "upon expiration of humanitarian parole under Section 1182(d)(5)(A), the noncitizen 'shall be restored to the status that he or she had at the time of parole' and that "[a]ny further inspection or hearing [following expiration of parole] shall be conducted under [8 U.S.C. § 1225 or § 1229a]." *Rodriguez-Acurio*, 2025 WL 3314420, at *18 (first and second alterations in original) (emphasis omitted) (quoting 8 C.F.R. § 212.5(e)(2)(i)).  As an initial matter, Respondents do not explain how Herrera can be "restored to the status" of "mandatory detention." (D.N. 9, PageID.56)  In support of that proposition, they cite *Chanaguano Caiza v. Scott*, No. 1:25-cv-00500-JAW, 2025 WL 3013081 (D. Me. Oct. 28, 2025).  In that case, the court concluded that the petitioner was "restored to detention under" § 1225(b)(2). *Id.* at *7.  But the court did not explain how a noncitizen can be "restored to detention" pursuant to 8 C.F.R. § 212.5(e)(2)(i). *See id.* at *6–7.  Moreover, the case is distinguishable because the parties there disputed whether the petitioner was detained under a different statutory provision, § 1225(b)(2). *See id.* at *6.  In any event, 8 C.F.R. § 212.5(e)(2)(i) does not provide that a noncitizen is treated as if "still at the border," and thus subject to mandatory detention, upon the expiration of parole. *Rodriguez-Acurio*, 2025 WL 3314420, at *17; *see id.* at *18.  Section 1182(d)(5)(A) "may permit [Herrera] to be returned to ICE custody, but her case, which necessarily includes the procedures required before detention, 'shall continue to be dealt with in the same manner as that of any other applicant for admission.'" *Id.* at *18 (quoting § 1182(d)(5)(A)).  "[A]ny other applicant for admission residing in the United States for [nearly] three years would be detained under Section 1226" and thus entitled to a bond hearing. *Id.*

8

(citations omitted); *see Lopez Benitez*, 795 F. Supp. 3d at 497; *see also Jennings*, 583 U.S. at 288 (observing that "once inside the United States . . . , an alien present in the country may still be removed" under § 1226).  Respondents' treatment of Herrera is consistent with this understanding because an administrative arrest warrant was issued authorizing her re-detention under § 1226 (*see* D.N. 9-3, PageID.70).  *See Rodriguez-Acurio*, 2025 WL 3314420, at *18.

"Sections 1225 and 1226 are 'mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.'" *Id.* at *24 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 485).  In accordance with its prior decisions, the Court concludes that Herrera is detained under § 1226 and is thus entitled to a bond hearing.  *See Singh v. Lewis*, No. 4:25-cv-133-DJH, 2025 WL 3298080, at *5 (W.D. Ky. Nov. 26, 2025); *Lopez*, 2025 WL 3217036, at *3; *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *8 (W.D. Ky. Nov. 4, 2025).

**B.     Due Process**

Herrera asserts that her detention violates due process under the Fifth Amendment. (*See* D.N. 1, PageID.12–13 ¶¶ 44–46)  Although Respondents do not contest this claim (*see generally* D.N. 9), the Court will nevertheless address it.

The Fifth Amendment's Due Process Clause extends to all persons, including noncitizens, regardless of immigration status and in the context of removal proceedings.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted); *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted).  To determine whether civil detention violates a petitioner's due process rights, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *Alonso*, 2025 WL 3083920, at *8 (citing *Barrera*, 2025 WL 2690565, at *6).  Under that test, the Court weighs

> (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Barrera*, 2025 WL 2690565, at *6 (citing *Mathews*, 424 U.S. at 335).

Like the petitioners in *Barrera* and other cases recently before the Court, Herrera "has a significant private interest in not being detained." *Id.*; *see Singh*, 2025 WL 3298080, at *6; *Alonso*, 2025 WL 3083920, at *9. Moreover, "the risk of erroneously depriving [Herrera] of [her] freedom is high if the [immigration judge] fails to assess [her] risk of flight and dangerousness." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025); *see* 8 C.F.R. § 1236.1(c)(8), (d)(1). Finally, the Court "recognizes that the United States does have a strong interest in ensuring noncitizens do not harm their community and that they appear for future immigration proceedings." *Barrera*, 2025 WL 2690565, at *7 (citation omitted). But a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite*, 2025 WL 2829511, at *15. Thus, because all three *Mathews* factors weigh in Herrera's favor, the Court concludes that her detention violates due process. *See Singh*, 2025 WL 3298080, at *5–6; *Barrera*, 2025 WL 2690565, at *6–7.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1) Herrera's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to immediately release Herrera, and, in the event she is arrested and re-detained,

10

provide her with a bond hearing before a neutral Immigration Judge in accordance with 8 U.S.C. § 1226(a).  Respondents **SHALL** certify compliance with the Court's Order by a filing on the docket no later than **March 2, 2026**.

      (2)      Herrera's motion for a temporary restraining order (D.N. 3) is **DENIED** as moot.

      (3)      Upon receipt of the notice of compliance, this matter will be **CLOSED**.

February 27, 2026

**David J. Hale, Chief Judge**
**United States District Court**